FILED
United States Court of Appeals
Tenth Circuit

**June 11, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DILLON YELLOWBEAR,

    Defendant-Appellant.

No. 09-8099

(D. Wyoming)

(D.C. No. 2:09-CR-126-CAB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **PORFILIO** and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This appeal challenges the procedural and substantive reasonableness of the district court's imposition of a 120-month sentence upon Dillon Yellowbear, after his conviction by a jury for two counts of assault. Although the district court judge who sentenced Mr. Yellowbear was not the trial judge who heard the trial testimony, we reject Mr. Yellowbear's contentions that the sentencing judge plainly erred because he failed to consider 18 U.S.C. § 3553(a)'s sentencing factors, and that it imposed a sentence that was unreasonably long.

## I. BACKGROUND

This case stems from an altercation between three enrolled members of the Northern Arapahoe tribe in Wyoming. On May 4, 2009, Alfreda Monroe drove with her husband, Gary Blackburn, Jr., and their two young children, to the Indian Health Services Clinic on the Wind River Reservation near Riverton, Wyoming. Mr. Blackburn waited in the car while Ms. Monroe went inside to pick up a prescription. As Ms. Monroe was exiting the front door of the clinic, she confronted Mary Headley, Mr. Yellowbear's mother. The two were acquainted; Mr. Yellowbear fathered a child out of wedlock with Ms. Monroe. Ms. Monroe and Ms. Headley apparently exchanged derogatory comments with each other.

After another confrontation inside the clinic between the two women, Ms. Headley called her daughter and asked her daughter to come down to the clinic to be with her as she exited the building. Shortly thereafter, Ms. Headley received a telephone call from Mr. Yellowbear, who instructed his mother that he felt she

-2-

was in danger and should leave the clinic. Mr. Yellowbear testified that he received a call from his sister urging him to get to the Indian Health Services Clinic right away because their mother needed him and it was urgent.

Upon his arrival at the clinic, Mr. Yellowbear exited the truck with an air rifle pellet gun and confronted Ms. Monroe next to her car in the parking lot, while she was talking to Ms. Headley. Mr. Blackburn joined his wife outside their car, while Mr. Yellowbear pointed the air rifle at him. Mr. Blackburn wrestled the rifle free and the two began brawling. Mr. Yellowbear pulled a knife and stabbed Mr. Blackburn three times. Mr. Yellowbear proceeded to shoot Ms. Monroe with the air rifle and fled in his truck.

A grand jury indicted Mr. Yellowbear with one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153, and two counts of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. The case proceeded to trial, where Mr. Yellowbear asserted self-defense. He stated that Mr. Blackburn had instigated the fight by punching Mr. Yellowbear twice in the head. The fight quickly escalated and Mr. Yellowbear was dazed and trying to hang on to Mr. Blackburn. Mr. Yellowbear conceded that his self-defense theory did not apply to shooting Ms. Monroe with his air rifle. He also testified that he called the hospital because he was very concerned about Mr. Blackburn's medical condition.

The jury deliberated for nearly two days. According to defense counsel, four or five of the jurors were crying as they returned to the courtroom. The jury acquitted Mr. Yellowbear on Count One (assault resulting in serious bodily injury to Mr. Blackburn) and found him guilty on Counts Two and Three (assault with a dangerous weapon as to Mr. Blackburn and Ms. Monroe).

At the sentencing hearing, U.S. District Court Judge Alan B. Johnson announced that he would be presiding instead of the trial court judge. Defense counsel objected, arguing that the nature and circumstances of the offense were dramatically revealed at trial. The jury deliberated for two days, came back crying, and returned a split verdict. Defense counsel requested a postponement of the sentencing hearing until there was further information regarding the trial court judge's ability to return to the bench for sentencing.

The district court denied Mr. Yellowbear's request for a continuance and proceeded with sentencing. The court reasoned as follows:

> Well, the odd point that we're in is I have been asked by Judge Brimmer to handle this matter today for him, and I certainly have no and have not and would not attempt to make any independent decision beyond what I have been asked to do.
>
> And I intend to proceed with the sentence as directed in this matter. I'm familiar with the case, having reviewed the Presentence Investigation Report, and believe if there were factors that the Judge wanted to be considered that he would have informed me of those factors - - of those matters.

Rec. vol. 3, at 386 (Sentencing Hr'g Tr. at 5)..

-4-

The district court then reviewed the sentencing guideline calculation, and Mr. Yellowbear's criminal and family history. The court determined that, based on an offense level of 26 and a criminal history category VI, the guideline range sentence was 120-150 months, stating that "[t]he minimum term must be served by a sentence of imprisonment." *Id.* at 390 (Sentencing Hr'g Tr. at 9).

Defense counsel argued for a below guideline sentence, on the grounds that a fair and just sentence under 18 U.S.C. § 3553(a) must take into consideration the following: that Mr. Yellowbear confessed to the crime during a recorded interview with the FBI, which was played for the jury; that there was a certain heat of passion to the crime, with Mr. Yellowbear responding to a call that his mother was in trouble; that he was assaulted by Mr. Blackburn as he attempted to enter the clinic; and that the jury stayed out for two days and returned a split verdict, with several jurors crying over the outcome. Defense counsel argued that a sentence in the five to seven year range was warranted because of the unique circumstances of this case. After testimony from Mr. Yellowbear and several family members, the court imposed a 120-month sentence on both counts, to be served concurrently. Mr. Yellowbear now appeals.

## II. DISCUSSION

Mr. Yellowbear argues that the district court committed plain error when it failed to consider § 3553(a)'s sentencing factors when it sentenced him, in part because the court apparently thought the guidelines to be mandatory. He also

-5-

argues that his sentence was greater than necessary and thus unreasonably long. We reject both of his arguments.

**A. Standard of Review**

We review a sentence for reasonableness, giving deference to the district court under an abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v. Smart*, 518 F.3d 800, 802-03, 805 (10th Cir. 2008). Mr. Yellowbear's arguments challenge the procedural and substantive reasonableness of his sentence. "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008) (citing *Gall*, 552 U.S. at 51). A sentence is procedurally unreasonable if a district court improperly calculates the applicable Guidelines range. *Gall*, 552 U.S. at 49; *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2819 (2009). We review a district court's legal conclusions regarding the Guidelines de novo and its factual findings for clear error. *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008).

"A challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence." *Smart*, 518 F.3d at 804. The § 3553(a) sentencing factors include not only "the nature of the offense," but also the history and "characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the

-6-

crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment. . . ." *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam); *see also* 18 U.S.C. § 3553(a). They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

A district court's sentence is substantively unreasonable "only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotation omitted). Such an abuse occurs "when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation omitted).

In reviewing the substantive reasonableness of a sentence, "[w]e may not examine the weight a district court assigns to various § 3553(a) factors," but must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the [sentence]." *Smart*, 518 F.3d at 808 (internal quotation marks and citations omitted). Ultimately, as Mr. Yellowbear suggests, the sentence must be sufficient but not greater than necessary to comply with the statutory purposes of the punishment. *See* 18 U.S.C. § 3553(a).

**B. Analysis**

1. Mr. Yellowbear's sentence was procedurally reasonable.

When a party fails to object contemporaneously to the district court's sentencing procedure, as Mr. Yellowbear failed to do here, we "review procedural reasonableness challenges for plain error." *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir.), *cert. denied*, 130 S. Ct. 395 (2009). Under the plain error doctrine, we will reverse the district court's judgment only if the party shows (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Morris*, 562 F.3d 1131, 1133 (10th Cir. 2009) (internal quotation marks omitted). "The plain error standard presents a heavy burden for an appellant, one which is not often satisfied." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

Mr. Yellowbear contends that a variety of factors contributed to the procedurally unreasonable sentence. First he maintains that the sentencing judge, who was not the trial judge, plainly erred because he treated the Guideline advisory sentence as "presumptively reasonable." Aplt's Br. at 15. Specifically the judge, in denying Mr. Yellowbear's motion for a continuance, noted that

> I have been asked by [the trial judge] to handle this matter today for him, and I certainly have no and have not and *would not attempt to make any independent decision beyond what I have been asked to do.*
>
> And *I intend to proceed with the sentence as directed in this matter.* I'm familiar with the case, having reviewed the Presentence Investigation Report, and believe if there were factors that the Judge wanted to be considered that he would have informed me of those factors - - of those matters.

Rec. vol. 3, at 386 (Sentencing Hr'g Tr. at 5) (emphasis added).

Mr. Yellowbear argues that the sentencing judge's absence from the trial impaired the judge's ability to weigh the trial testimony and its emotional impact when the court imposed Mr. Yellowbear's sentence.  We note that Fed. R. Cr. P. 25(b) anticipates the occasion where a trial judge is unable to sentence a defendant:

> (b) After a Verdict or Finding of Guilty.
>
>> (1) In General. After a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability.

Fed. R. Cr. P. 25(b).  The record is not clear why the trial court judge could not perform his duties at sentencing, apart from the sentencing judge's statement that the trial judge was "unavailable" and would remain unavailable for an undetermined amount of time.  Rec. vol. 3, at 384 (Sentencing Hr'g Tr. at 3).  The sentencing judge indicated he reviewed the Presentence Investigation Report, which set forth the offense and the critical evidence adduced at trial.  "A successor judge is given broad discretion in determining whether he properly can perform his sentencing duties in a case upon which he did not preside at trial." *United States v. Whitfield*, 874 F.2d 591, 593 (8th Cir. 1989) (citing *United States v. Spinney*, 795 F.2d 1410, 1413 (9th Cir. 1986); *United States v. Bryant*, 430 F.2d 237, 241 (8th Cir. 1970)).  "A successor judge need only familiarize himself

with the evidence and legal issues involved and exercise informed discretion in imposing sentence." *Whitfield*, 874 F.2d at 593.[1]

Next, Mr. Yellowbear suggests that the sentencing judge felt hamstrung by the guidelines themselves. The district court also stated, in calculating Mr. Yellowbear's advisory guideline range, that: "Based on this calculation . . . the guideline sentencing range . . . is 120 to 150 months. The minimum term must be

---

[1] As the rule recognizes, post-trial reassignment to successor judges is permissible; it also violates no constitutional right. *United States ex rel Fields v. Fitzpatrick*, 548 F.2d 105, 107 (3d Cir. 1977) ("No other court has held that there is such a right under the United States Constitution, although the precise issue has seldom arisen. We do not recognize a constitutional right to be sentenced by one's trial judge in every case."); *see also United States v. Nelson*, No. 98-2102, 1998 WL 658393, at *2 (10th Cir. Sept. 15, 1998) (rejecting defendant's contention that successor judge "lacked sufficient familiarity to impose sentence") (unpublished); *Whitfield*, 874 F.2d at 593 (noting no "requirement on the sentencing judge" to "have access to the trial transcript at the time of sentencing"); *United States v. Todd-Murgas*, 352 F. App'x 513, 516 (2d Cir. 2009) (where case reassigned for resentencing, "the record indicates that [the] Chief Judge . . . carefully reviewed all materials relevant to the prior sentencing in this case," and "[i]n such circumstances, we will not assume from a failure explicitly to reference statements made by the original sentencing judge indicating an inclination to show greater leniency or severity but for the Guidelines mandates that the court overlooked such materials") (internal quotation marks omitted).

We do note some concern, however, that there is no indication as to why the trial judge was unavailable, and the record indicates no notice was given to the parties, neither of which appears to be in strict compliance with Fed. R. Cr. P. 25. However, any error resulting from the late unexplained substitution would be harmless, as Mr. Yellowbear suffered no prejudice from the substitution, nor does he cite Rule 25. *See United States v. Santos*, 588 F.2d 1300, 1303-04 (9th Cir. 1979) (holding that failure to strictly comply with Rule 25 was harmless error and noting that "[i]f a substitution of judges does become necessary, the 'new' judge should certify that he has familiarized himself with the record of the trial").

satisfied by a sentence of imprisonment." Rec. vol. 3, at 390 (Sentencing Hr'g Tr. at 9).

Mr. Yellowbear argues that the sentencing judge was unduly influenced by what the trial judge told him and felt confined by the guidelines, because the sentencing judge noted that he "believe[d]" there were no sentencing factors for him to consider. *Id.* at 386 (Sentencing Hr'g Tr. at 5). In addition, the sentencing judge's statement regarding the mandatory nature of the "minimum term" of imprisonment suggests he did not understand his discretion in sentencing Mr. Yellowbear. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (holding that the sentencing court must provide some basis for this Court to conclude "[it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority"). As a result, he argues, the sentencing judge failed to properly consider the § 3553(a) sentencing factors when it sentenced Mr. Yellowbear to 120 months' imprisonment, which amounts to plain error.

We disagree with Mr. Yellowbear's reasoning. The sentencing judge clearly reviewed the record in the case and discussed it with the trial judge. At the sentencing hearing, the district court also considered Mr. Yellowbear's personal characteristics, including his mental and emotional health, his substance abuse issues, and his educational background.

-11-

The court also heard and weighed defense counsel's argument for a downward variance. Counsel suggested that under § 3553(a)(1), the court should consider the seriousness of the offense here – in the heat of passion, Mr. Yellowbear came to the protection of his mother and Mr. Blackburn assaulted him. Counsel also noted Mr. Yellowbear's history of substance abuse and need for "serious counseling." Rec. vol. 3, at 395 (Sentencing Hr'g Tr. at 14). In rejecting these arguments, the court considered these arguments and also recognized the difficulty the jury had in making its decision.[2]

A sentencing court must "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), but when the sentence is within a

---

[2] We acknowledge that the sentencing judge's statement that "the minimum term must be satisfied by a sentence of imprisonment," when read in isolation, might suggest the judge believe the guidelines to require a minimum sentence. Our review of the record indicates that the sentencing judge was likely referring to USSG § 5C1.1(f), which states that "[i]f the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment." USSG § 5C1.1(f); Rec. vol. 2 at 19 (Presentence Investigation Report) ("Because the guideline range is in Zone D of the Sentencing Table, the minimum term must be satisfied by a sentence of imprisonment."). Thus a guideline range within Zone D requires the entire term to be served in prison, whereas "[a] Zone C sentence may be satisfied by serving half of the imposed term in community confinement or home detention. U.S.S.G. § 5C1.1(d)(2)." *United States v. Miller*, 38 F. App'x 517, 519 (10th Cir. 2002); *United States v. Wilkinson*, 590 F.3d 259, 264 (4th Cir. 2010) ("[T]he PSR . . . stated that because the applicable advisory Guidelines sentencing range was in Zone D of the Sentencing Table, Wilkinson was actually ineligible for probation."). Our review of the record indicates that the sentencing judge was relying on the Presentence Investigation Report, and, as stated, was well aware of his discretion and of the advisory nature of the guidelines.

properly calculated guidelines range, the court need provide only a "general statement noting the appropriate guideline range and how it was calculated." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1202 (10th Cir. 2007) (quotation omitted). Although the sentencing judge here did not quote the § 3553(a) factors, nor did it state on the record that it considered the § 3553(a) factors, which is certainly the preferably route, there is no doubt the judge did precisely what is required: he considered the nature and circumstances of the offense, Mr. Yellowbear's history and characteristics, the need for the sentence, and the need for Mr. Yellowbear to obtain educational, correctional and medical treatment. *See United States v. Verdin-Garcia*, 516 F.3d 884, 898 (10th Cir. 2008) ("[A] district court need not 'march through § 3553(a)'s sentencing factors,' nor do we 'demand that the district court recite any magic words to show that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider.'") (quoting *United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005)). Because the sentencing judge considered the § 3553 factors, there is no plain error here. *See Ruiz-Terrazas*, 477 F.3d at 1201 ("Section 3553(a) imposes on the district court a duty to 'consider' a variety of important sentencing considerations. But it nowhere imposes on the court a duty to address those factors on the record . . . ."). The sentencing judge's explanation for the sentence imposed, in the context of a properly calculated guidelines range, satisfied the court's obligation to consider and apply the § 3553(a) sentencing factors.

-13-

2. Mr. Yellowbear's sentence was substantively reasonable.

Mr. Yellowbear next argues that his 120-month sentence is substantively unreasonable because the district court failed to heed § 3553(a)'s mandate that a sentence be "sufficient, but not greater than necessary," to comply with the statutory purpose of punishment, and thus his resulting sentence was too long. In making this argument, he claims that his actions were motivated by his desire to aid his mother and that he acted in self-defense. He argues that his 120-month punishment does not reflect that nature and circumstances of his crime. We find these arguments similarly unavailing.

While the district court must employ the "sufficient, but not greater than necessary," parsimony principle in crafting a sentence, we review the sentence only for reasonableness. *See Rita v. United States*, 551 U.S. at 350-51*); United States v. Martinez-Barragan*, 545 F.3d 894, 904 (10th Cir. 2008). Because we have held that Mr. Yellowbear's sentence was properly calculated under the Guidelines, we presume it to be reasonable. *Kristl*, 437 F.3d at 1054. Even though, by presuming reasonableness, we give significant deference to the district court's decision, a district court must still apply the § 3553(a) sentencing factors. *See Gall*, 552 U.S. at 48-49. Thus, in order to rebut this presumption, Mr. Yellowbear must show that in light of the § 3553(a) factors, the sentence was unreasonable. *Kristl*, 437 F.3d at 1055.

Although the sentencing court did not specifically recite the § 3553(a) factors, as we have noted above, the court clearly considered Mr. Yellowbear's individual circumstances, which indicates the court tailored the sentence to him. To be sure, the court was concerned with providing Mr. Yellowbear substance abuse and medical treatment, *see* Rec. vol. 3, at 390 (Sentencing Hr'g Tr. at 9), and the court also aimed to ensure that the sentence reflected the gravity of the offenses, deterred recidivism, and protected the public from any potential further criminal activity. *See id.* at 405-06 (Sentencing Hr'g Tr. at 24-25). Finally, Mr. Yellowbear's criminal history category of VI, which is, as the sentencing court noted, "about as high as you can go," *id.* at 389 (Sentencing Hr'g Tr. at 8), undermines his argument that a lower sentence would be effective in complying with the statutory purposes of sentencing. Mr. Yellowbear is unable to rebut the presumption of reasonableness that attaches to his sentence. Accordingly, we hold his sentence to be substantively reasonable.

### III. CONCLUSION

Accordingly, we AFFIRM Mr. Yellowbear's sentence.

Entered for the Court,


Robert H. Henry
Circuit Judge